# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| CAREY D. SMITH, | * |
| Plaintiff | * |
| v. | * CIVIL NO. JKB-11-1023 |
| CAPITAL ONE AUTO FINANCE, INC., | * |
| Defendant | * |

## MEMORANDUM

Carey D. Smith ("Plaintiff") brought this suit against Capital One Auto Finance, Inc. ("Defendant"), alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692-1692p (West 2011) ("FDCPA"), the Maryland Credit Grantor Closed End Credit Provisions, MD. CODE ANN., COM. LAW §§ 12-1001, *et seq.* ("CLEC"), the Maryland Consumer Protection Act, MD. CODE ANN., COM. LAW §§ 13-101, *et seq.* ("MCPA"), and conversion. Defendant now moves for summary judgment. The issues have been briefed and no oral argument is required. Local Rule 105.6. For the reasons explained below, Defendant's Motion for Summary Judgment (ECF No. 33) is GRANTED.

### I. BACKGROUND

This case arises out of Plaintiff's allegation that Defendant wrongfully repossessed her car and then sold it without her knowledge. Plaintiff alleges that in May of 2005 she took out a loan from Defendant to finance the purchase of a 2005 BMW 3-Series automobile ("The Vehicle"). (Compl. ¶ 6, ECF No. 2). She further alleges that at some point prior to September of

2007, she made a lump sum payment to Defendant by wire transfer in the amount of $23,900.00, which she claims satisfied in full the amount due on her loan. (Compl. ¶ 8). Defendant however, contends that Plaintiff's payment did not fully satisfy the balance of her loan because it did not cover accrued interest and late fees. (Def.'s Mem. Summ. J. 2, ECF no. 33-1). When Plaintiff did not make any further payments, Defendant repossessed The Vehicle sometime between September and November of 2007. (Def.'s Mem. 2); (Compl. ¶ 7). Plaintiff demanded that Defendant either return The Vehicle or refund her loan payments, but Defendant did neither. (Compl. ¶ 9). Instead, on or about January 31, 2008, Defendant sold The Vehicle and applied the proceeds to Plaintiff's loan balance. Defendant then sent Plaintiff the remaining proceeds, about $6,000.00, by check. (Compl. ¶ 10); (Def.'s Mem. 3). Plaintiff alleges that she never received notice that Defendant intended to sell The Vehicle. (Compl. ¶ 11).

On March 2, 2011, Plaintiff filed a complaint in the Circuit Court for Baltimore City, which contained following claims: (1) Defendant violated the Fair Debt Collection Practices Act by misrepresenting the amount and status of her debt, by wrongfully repossessing The Vehicle, and by retaining money from the sale proceeds that Plaintiff did not owe; (2) Defendant violated the MCLEC by repossessing The Vehicle without notice when her loan was not in default; (3) Defendant violated the Maryland Consumer Protection Act by repossessing The Vehicle on account of alleged debts that she did not, in fact, owe, by misrepresenting the amount and status of her debt, and by failing to give her proper notice of its intent to sell The Vehicle; and (4) Defendant committed conversion by repossessing the Vehicle when Plaintiff's loan was not in default. (Compl., ECF No. 2).

On April 19, 2011, Defendant removed the case to this Court. (Notice of Removal, ECF No. 1). Defendant then moved to dismiss the complaint for failure to state a claim. The Court

granted the motion in part and denied it in part, dismissing only Plaintiff's claim under the Fair Debt Collection Practices Act and part of her claim under the Maryland Consumer Protection Act. (Order, ECF No. 23).

Following discovery, Plaintiff's Counsel informed Defense Counsel that Plaintiff intended to voluntarily dismiss the case. (Status Report, ECF No. 35-7, -7, Exs. E, G). However, on November 23, 2011, Plaintiff's Counsel filed a motion to withdraw his appearance as Plaintiff's attorney, which the Court granted. (Marginal Order, ECF No. 31). Shortly after Plaintiff's Counsel's withdrawal, Defendant filed a motion for summary judgment on the grounds that Plaintiff's remaining claims are barred by her participation in a related class action settlement or, alternatively, by the relevant statutes of limitations. (Def.'s Mot. Summ. J. ECF No. 33). The Court notified Plaintiff in writing of the motion, of her right to respond, and of the possible consequences of her failure to respond. (Rule 12/56 Letter, ECF No. 34). Plaintiff did not file a response, and the motion is now ripe.

## II. LEGAL STANDARD

In this jurisdiction, a district court may not enter summary judgment against a *pro se* plaintiff without first providing her with "fair notice of the requirements of the summary judgment rule," in a form that is "sufficiently understandable" to one in her circumstances. *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975). On December 9, 2011, the Court furnished Plaintiff with notice that Defendant had filed a motion for summary judgment, that judgment could be entered against her if the motion were granted, and that she had a right to file a response, supported by affidavits and other evidence. (Rule 12/56 Letter, ECF No. 34). Thus, having received proper *Roseboro* notice, Plaintiff must be held to the normal standards of

summary judgment, as described below. *See Larken v. Perkins*, 22 Fed. App'x. 114, 115 n.* (4th Cir. 2001).

Federal Rule of Civil Procedure 56(a) directs district courts to grant summary judgment if the moving party shows "that there is no genuine dispute as to any material fact" and that it is "entitled to judgment as a matter of law." If the moving party carries this burden, then summary judgment will be denied only if the opposing party can identify specific facts, beyond the allegations or denials in the pleadings, that show a genuine issue for trial. Fed. R. Civ. P. 56(e)(2). To carry these respective burdens, each party must support its assertions by citing particular parts of materials in the record constituting admissible evidence. Fed. R. Civ. P. 56(c)(1)(A). The court will then assess the merits of the motion, viewing all facts and reasonable inferences in the light most favorable to the opposing party. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008).

### III. ANALYSIS

Defendant argues that it is entitled to summary judgment because Plaintiff's claims are precluded by her participation in a class action settlement in the case of *Watts v. Capital One Auto Finance, Inc.*, 1:07-cv-03477-CCB (D. Md. 2007), decided by Judge Blake of this Court, which dealt with similar claims. The Court agrees.[1]

Generally, an absentee class member who receives adequate notice of an action to which his class is a party, and who fails to opt out by the deadline stated in the notice, is bound by the disposition of the action, including settlement. SEE CHARLES ALAN WRIGHT, ET AL., 7AA FED. PRAC. & PROC. CIV. § 1789 (3d. ed.); *Reppert v. Marvin Lumber and Cedar Co.*, 359 F.3d 53, 56-7 (1st Cir. 2004). To merit summary judgment, then, Defendant must show four things: (1)

---

[1] Because the Court finds this argument to be dispositive it does not address Defendant's argument that Plaintiff's claims are also time-barred.

4

that Plaintiff was a member of the *Watts* Settlement Class; (2) that the *Watts* Settlement Agreement precludes the claims that Plaintiff seeks to assert in this case; (3) that Plaintiff received adequate notice of the settlement; and (4) that she did not timely opt out.

### A. Class Membership

The *Watts* Settlement Agreement defined the Settlement Class as:

> All Persons who entered into installment sale contracts with Maryland automobile dealers for the purchase of motor vehicles where: (1) the installment sale contracts contained an election of Subtitle 10 of Title 12 of Maryland's Commercial Law Article ("CLEC"): (2) the installment sale contracts were assigned to, or acquired by, [Defendant]; (3) the motor vehicles were repossessed during the Class Period [i.e., November 19, 2003 - December 20, 2007] and later sold by [Defendant]; and (4) the Person was a Maryland resident at the time the motor vehicle was repossessed.

(*Watts* Settlement Agreement, ¶ 11(a), (f), ECF No. 33-4, Ex. 3). Plaintiff clearly meets each of these criteria. Plaintiff herself alleges that she entered into an installment contract to finance the purchase of The Vehicle, that the contract was governed by the CLEC, that Defendant owned the contract, that Defendant repossessed The Vehicle in or about September of 2007, that Defendant later sold The Vehicle, and that she was a Maryland resident at the time of repossession. (Compl. ¶ 1, 6, 7, 11, 24); (Pl.'s Mem. Opp. Dismiss 10, ECF No. 14-1).

However, the Settlement Agreement specifically excluded from the Class "any individual otherwise obligated on an Installment Contract account that was satisfied more than six months prior to the filing of this Complaint [i.e., November 19, 2007]." (*Watts* Settlement Agreement, ¶ 11(a), ECF No. 33-4, Ex. 3). In her previous memorandum in opposition to Defendant's Motion to Dismiss, Plaintiff argued that this provision excluded her from the Settlement Class because she satisfied her loan balance with Defendant on July 21, 2006, more than a year before the *Watts* complaint was filed. (Pl.'s Mem. Opp. Dismiss 10). Defendant, however, has submitted an affidavit from its records custodian, Kevin L. Lawson, stating that Plaintiff never paid off her

5

loan balance, and that the balance was not satisfied until Defendant sold The Vehicle and applied the sale proceeds to her account. (Lawson Aff., ECF No. 33-2). According to Mr. Lawson's sworn testimony, Defendant's records show that Plaintiff sent a wire transfer payment on or about July 27, 2006, in the amount of $21,876.00. (*Id.* at ¶ 7). The balance on her account, however, was allegedly $28,670.84. *Id.* Therefore, after the July 27 payment, Plaintiff allegedly still owed more than $6,000 on the loan. According to Lawson, the remaining balance was not satisfied until Defendant sold The Vehicle on January 31, 2008 (about two months after the complaint in *Watts* had been filed).

On this record, the Court must conclude that there is no dispute of material fact with respect to Plaintiff's membership in the *Watts* class. Plaintiff has admitted that she meets all the criteria for class membership and has proffered no evidence that she meets any of the criteria for exclusion. Therefore, the Court finds that Plaintiff was a member of the *Watts* Settlement Class.

### B. Release

The release provision of the *Watts* Settlement Agreement reads as follows:

> **Plaintiffs' Release.** Upon Final Approval, Representative Plaintiff and each Settlement Class Member, . . . shall be deemed to have fully released and forever discharged the Released Parties from any claim, right, demand, charge, complaint, action, cause of action, obligation, or liability for actual or statutory damages, punitive damages, equitable relief, restitution or other monetary relief of any and every kind, including those based on CLEC, or any other federal, state, or local law, statute, regulation, or common law, whether known or unknown, suspected or unsuspected, under the law of any jurisdiction, which the Representative Plaintiff or any Settlement Class Member ever had, now have or may have in the future resulting from, [sic] arising out of (a) any act, omission, event, incident, matter, dispute, or injury arising from the Automobile Loan Accounts financed by or assigned to [Defendant]; (b) any acts or omissions that were raised or could have been raised in the Action; and (c) any event, matter, dispute, or thing that in whole or in part, directly or indirectly, relates to or arises out of said events specified in (a) or (b) above.

(*Watts* Settlement Agreement ¶ 20(a)).  There is no dispute that all the claims Plaintiff seeks to assert in this case arise out of an "Automobile Loan Account" financed by Defendant within the timeframe covered by the Settlement Agreement.  *See, supra*.  Therefore, there can also be no dispute that Plaintiff's claims are covered by the Agreement's release provision.

### C. Notice

In her Order granting preliminary approval to the *Watts* Settlement Agreement, Judge Blake ordered the Settlement Administrator, BrownGreer PLC, to provide the following notice to all potential class members:

> Within thirty (30) calendar days of the entry of this Order, pursuant to the procedures detailed in the Agreement, the Settlement Administrator shall provide notice of this Settlement and of the Settlement Hearing to all potential Class Members by mailing to each person identified as a Potential Class Member on the Class Member List a copy of the Notice of Pendency of Class Action, Proposed Settlement and Hearing (the "Class Notice"), substantially in the form attached as Exhibit B to this Order.  If any Class Notices are returned because of an incorrect or invalid address, the Settlement Administrator is ordered to take the actions set forth in paragraph 15 of the Agreement.  In order to assist in the notice of process, for all persons whose first notice of the Settlement and Settlement Hearing in this case is returned as undeliverable, within five (5) days of receiving the returned notice, the Class Administrator shall request in writing from Defendant the social security numbers for those Class Members, and Defendant is further ordered to use its best efforts to provide social security numbers for those persons to the Settlement Administrator and Class Counsel within five (5) days of the Class Administrator's request, and shall provide said social security numbers in no event later than ten (10) days after the Class Administrator's request.  The parties, [Defendant's] Counsel and Class Counsel shall maintain the confidentiality of any such social security numbers pursuant to paragraph 13 of the Agreement.

(*Watts* Preliminary Approval Order ¶ 11, ECF No. 33-5, Ex. 4).  Paragraph 15 of the Agreement reads, in pertinent part:

> The Settlement Administrator will conduct a search using a competent information broker on the Internet and/or a recognized credit bureau to ensure that any mailed notice which is returned for the reason that the address is incorrect will be researched and updated with new information, if any, and a second notice sent.  The Settlement Administrator shall have no obligation to engage in

7

additional efforts to locate a Settlement Class Member if a second notice is returned.

(*Watts* Settlement Agreement ¶ 15). Judge Blake explicitly found that these notice provisions were: "(a) the best Notice practicable under the circumstances; (b) due and sufficient notice of this Order to all persons affected by and/or entitled to participate in the Settlement; and (c) in full compliance with the notice requirement of FED. R. CIV. P. 23 and due process to all persons entitled to such Notice." (*Watts* Preliminary Approval Order ¶ 14).

Defendant has submitted a copy of a declaration (originally filed in the *Watts* litigation) by William Atkinson, a representative of BrownGreer PLC, stating that BrownGreer sent notice to all potential members of the *Watts* Settlement Class in accordance Judge Blake's Order. (Atkinson Dec., ECF No. 33-6, Ex. 5). The Declaration further states that BrownGreer initially mailed the above notice to 2,698 potential class members, whose names and addresses had been provided by Defendant. (*Id*. ¶ 2). Of those, approximately 749 were returned as undeliverable. (*Id*. ¶ 5). BrownGreer then used Lexis Nexis to find new possible addresses for 516 of the members whose notices had been returned. (*Id*.). The postal service provided forwarding addresses for an unidentified number of the remaining 233 members. (*Id*.). BrownGreer then sent second notices to the new addresses. (*Id*.). In total, BrownGreer confirmed that 283 notices failed to reach their intended class member. (*Id*.). Finally, the Declaration states that BrownGreer received no request from any potential class member to opt out of the Settlement Agreement. (*Id.* ¶ 4).

Defendant has also submitted a copy of the notice that BrownGreer sent to the potential class members, which reads in pertinent part:

> If the settlement is approved, the Court will enter a judgment dismissing all claims against [Defendant] with prejudice. Under the terms of the Settlement Agreement, the Class Members will release [Defendant] with respect to the claims

8

> that were raised or could have been raised that relate to or arise out of the facts and circumstances pertaining to the automobile installment sales contracts at issue in this case. The release is intended to resolve all matters related to or pertaining to the automobile installment sales contracts involved in this case as between Class Members and [Defendant] . . . .

(*Watts* Notice § IV, ¶ 8, ECF No. 33-9, Ex. 8).

In view of these submissions, the Court must conclude that there is no genuine dispute that Plaintiff received adequate notice of the *Watts* Settlement Agreement. Judge Blake found that the notice provisions in her Preliminary Approval Order were sufficient to provide all interested parties with the notice to which the law entitled them, and Defendant has offered competent evidence that the Settlement Administrator faithfully executed those provisions and received no requests from potential class members to opt out of the settlement. The Court therefore finds that Plaintiff received adequate notice of the *Watts* Settlement Agreement and did not opt out.

## IV. CONCLUSION

Defendant has carried its burden of showing the absence of any genuine dispute of material fact that would require resolution by a jury. The evidence on record shows that Plaintiff was a member of the *Watts* Settlement Class, that the *Watts* Settlement Agreement released a category of claims that includes the claims Plaintiff asserts in this case, that the Settlement Administrator provided adequate notice to all potential class members, and that Plaintiff did not opt out of the settlement. Plaintiff has therefore released any and all claims she may have had against Defendant with regard to the financing of her 2005 automobile purchase and is barred from reasserting them.

Accordingly, an ORDER shall issue GRANTING Defendant's Motion for Summary Judgment (ECF No. 33).

Dated this 9th day of January, 2012

                                                      BY THE COURT:

                                                     /s/
                                                  James K. Bredar
                                                United States District Judge